UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

----------------------------------------------

Eugene Scalia, Secretary of Labor,
United States Department of Labor,

                 Plaintiff,

v.

Alpha & Omega USA, Inc. d/b/a
Travelon Transportation, a
Minnesota corporation; and Viktor
Cernatinskij, an individual,

                 Defendants.

----------------------------------------------

Case No. 20-cv-1033 (DSD/HB)

**DEFENDANTS' MEMORANDUM
OF LAW IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT**

## I.    INTRODUCTION

On April 28, 2020, Plaintiff Eugene Scalia, Secretary of Labor, United States Department of Labor ("Secretary of Labor"), filed a complaint against Defendants Alpha & Omega USA, Inc., doing business as Travelon Transportation ("Travelon"), and its owner, Viktor Cernatinskij ("Cernatinskij"), claiming that Defendants violated the overtime, minimum wage, and recordkeeping requirements of the Fair Labor Standards Act ("FLSA"). The Secretary of Labor alleges that Travelon provided non-emergency medical transportation services using drivers that Defendants misclassified as independent contractors. The Secretary of Labor alleges that an employment relationship existed between the drivers and Travelon. The Secretary of Labor seeks an injunction enjoining Defendants from violating the sections of the FLSA at issue and seeks to recover unpaid minimum wage and overtime compensation allegedly owing to Defendants' purported

employees, together with an equal additional amount as liquidated damages. Defendants now move for summary judgment on the ground that the drivers at issue were not, as a matter of law, employees of Travelon under the FLSA and therefore have no viable claims under the FLSA. But if the Court somehow determines that a genuine issue of material fact exists as to whether an employment relationship existed between the drivers and Travelon, Defendants then seek a ruling by the Court that liquidated damages are not appropriate in this case.

## II.    STATEMENT OF UNDISPUTED MATERIAL FACTS

### A. The parties.

At all times material herein, Travelon was a special transportation service ("STS") provider certified by the Minnesota Department of Transportation ("MnDOT"). (Cernatinskij Dep.[1] at 60:10-61:6; Declaration of Viktor Cernatinskij ("Cernatinskij Decl.") ¶2). Minn. Stat. § 174.29, subd. 1 defines "special transportation service" as

> motor vehicle transportation provided on a regular basis by a public or private entity or person that is designed exclusively or primarily to serve individuals who are elderly or disabled and who are unable to use regular means of transportation but do not require ambulance service, as defined in section 144E.001, subdivision 3. Special transportation service includes but is not limited to service provided by specially equipped buses, vans, taxis, and volunteers driving private automobiles. Special transportation service also means those nonemergency medical transportation services under section 256B.0625, subdivision 17, that are subject to the operating standards for special transportation service under sections 174.29 to 174.30 and Minnesota Rules, chapter 8840.

---

[1] Excerpts from the transcript of the deposition of Viktor Cernatinskij are attached as Exhibit 1 to the Declaration of Michael J. Minenko.

Minnesota law requires that STS providers obtain an annual certificate of compliance from the commissioner of transportation. Minn. Stat. § 174.30. As an STS provider certified by MnDOT, Travelon was subject to the operating standards adopted by the commissioner of transportation regarding driver qualifications and training requirements, appropriate vehicle safety equipment, inspection and maintenance of vehicles, and minimum insurance requirements. Minn. Stat. § 174.30, subd. 2. These operating standards are set forth in MnDOT's Administrative Rules, Parts 8840.5100 through 8840.6400 (Minn. R. 8840.5100 through Minn. R. 8840.6400).

At all times material herein, Travelon was authorized to provide special transportation service to medical assistance recipients. (Cernatinskij Decl. ¶ 3.) The commissioner of the Minnesota Department of Human Services ("DHS") supervises the administration of medical assistance for eligible Minnesota recipients. Minn. Stat. § 256B.04, subd. 1. DHS has made administrative rules for its administration of medical assistance in accordance with its rulemaking authority. *See id.* at subd. 2. These rules include Minn. R. 9505.0315, which sets forth the eligibility requirements for medical assistance payment to a provider of special transportation. Minn. R. 9505.0315, subps. 2 & 7. Item R(2) of Minn. R. 9505.0445 specifies the payment rates for special transportation and Minn. R. 9505.2175, subp. 4 describes the service records requirements imposed on special transportation providers.

Cernatinskij is the President, CEO, and sole shareholder of Travelon. (Cernatinskij Dep. at 40:15-18; 43:12-16).

3

Travelon entered into written independent contractor agreements with individuals and entities (hereinafter referred to collectively as "drivers" and each individually as "driver") under which each driver as "Contractor," agreed to provide special transportation services to Travelon's customers. (Cernatinskij Dep. at 246:10-247:12; Declaration of Michael J. Minenko ("Minenko Decl.") Exhibit 3). The drivers provided non-emergency medical transportation through Travelon's MnDOT certification number. (Cernatinskij Dep. at 120:6-15). Non-emergency medical transportation (NEMT) is a sub-set category of STS. *See* Minn. Stat. § 174.29, subd. 1.

The Secretary of Labor is suing Defendants on behalf of 21 named drivers. (*See* Complaint [ECF No. 1], including Exhibit A to the Complaint.) In 29 U.S.C. § 216, Congress imposed penalties for violations of the FLSA and created two parallel vehicles for enforcement. Section 216(b) confers on employees the right to sue for unpaid minimum wages, unpaid overtime wages, and an equal amount as liquidated damages. Section 216(c) authorizes the Secretary of Labor to bring an action for the same wages and damages, and automatically terminates the right of the individual employee to sue for wages covered by the Secretary's suit, further specifying that "any sums thus recovered by the Secretary of Labor on behalf of an employee pursuant to this subsection shall be held in a special deposit account and shall be paid . . . directly to the employee or employees affected." 29 U.S.C. § 216(c). This provision authorizes the Secretary to bring an action against employers to recover exactly the same wages and damages as the individual employee whose rights were violated could obtain in his own suit – and the provision further specifies that any such recovery be forwarded to the employee for his personal benefit. A § 216(c)

4

suit thus does no more than ascertain the rights of a private individual and obtain a judgment for that individual's benefit.

**B. The relationship between Travelon and the drivers.**

1.  The drivers' services were not an integral part of Travelon's business. (*See infra* pp. 9-11 for citation to those parts of the record supporting this undisputed material fact).

2.  Defendants did not control the manner in which the drivers' work was performed. (*See infra* pp. 11-16 for citation to those parts of the record supporting this undisputed material fact).

3.  The drivers' opportunity for profit or loss gave them a substantial amount of control over the level of their compensation. (*See infra* pp. 16-17 for citation to those parts of the record supporting this undisputed material fact).

4.  The drivers had a significant investment in equipment and materials for their services. (*See infra* p. 17 for citation to those parts of the record supporting this undisputed material fact).

5.  A significant amount of skill was required to perform the drivers' services. (*See infra* pp. 17-18 for citation to those parts of the record supporting this undisputed material fact).

6.  The majority of the drivers did not have a permanent relationship with Travelon. (*See infra* p. 18 for citation to those parts of the record supporting this undisputed material fact).

**C. Claim for liquidated damages.**

7. Even if it is found that an employment relationship existed between the drivers and Travelon, Defendants acted in good faith and with reasonable grounds for believing that the drivers were properly classified as independent contractors. (*See infra* pp. 19-22 for citation to those parts of the record supporting this undisputed material fact).

## III.   LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (quoting Rule 56(c) of the Federal Rules of Civil Procedure).

A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Thus, "the substantive law will identify which facts are material." *Id.* Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id.*

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman,* 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson,* 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts,"

*Matsushita,* 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson,* 477 U.S. at 249-50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson,* 477 U.S. at 248-49. The party moving for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel,* 953 F.2d at 395 (citing *Celotex,* 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005). The nonmoving party who asserts that a fact is genuinely disputed must support the assertion by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 322.

In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the party opposing the motion. *Anderson,* 477 U.S. at 255. However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed

7

'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 129 S. Ct. 2658, 2677 (2009).

## IV.   ARGUMENT

The Secretary of Labor claims that Defendants violated the overtime, minimum wage, and recordkeeping requirements of the FLSA. The existence of an employer-employee relationship is a prerequisite to asserting a claim under the FLSA. 29 U.S.C. § 203(d); *see also* 29 U.S.C. § 216(b) ("An action . . . may be maintained against any employer."); *Schmidt v. DIRECTV, LLC*, No. 14-3000 (JRT/JSM), 2016 U.S. Dist. LEXIS 16410, at *29 (D. Minn. Jan. 22, 2016) (citing *Childress v. Ozark Delivery of Mo.*, LLC, 95 F. Supp. 3d 1130, 1138 (W.D. Mo. 2015)). Therefore, the threshold issue in this case is whether the drivers who provided special transportation services through their contractual relationship with Travelon were employees of Travelon and not independent contractors.

### A.  Defendants properly classified the drivers as independent contractors.

"The test of employment under the FLSA is one of economic reality" and is ultimately a question of law for the Court to decide despite involving questions of fact. *Karlson v. Action Process Serv. & Private Investigation*, LLC, 860 F.3d 1089, 1094 (8th Cir. 2017) (quoting *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 301, 105 S. Ct. 1953, 85 L. Ed. 2d 278 (1985)) (cleaned up). Many courts have applied a six-factor balancing test to determine the economic realities of the relationship. *See,*

*e.g.*, *Acosta v. Off Duty Police Servs., Inc.*, 915 F.3d 1050, 1055 (6th Cir. 2019) (applying six-factor test); *Le v. Regency Corp.*, 957 F. Supp. 2d 1079, 1089 (D. Minn. 2013) (same).

Under the six-factor test to determine if the employer-employee relationship exists, the Court should examine

(1) whether the service rendered by the worker is an integral part of the alleged employer's business;

(2) the degree of skill required for the rendering of the services;

(3) the worker's investment in equipment or materials for the task;

(4) the degree of the alleged employer's right to control the manner in which the work is performed;

(5) the worker's opportunity for profit or loss, depending upon his skill; and

(6) the permanency of the relationship between the parties.

*Yan Ming Wang v. Jessy Corp.,* No. 17-5069 (JRT/HB), 2020 U.S. Dist. LEXIS 116570, at *10 (D. Minn. July 2, 2020) (citing *Acosta*, 915 F.3d at 1055 (cleaned up) and *Karlson*, 860 F.3d at 1093-94 (discussing and affirming application of the same "widely-used economic realities factors")). "The economic realities test is not mechanical or formal in its application. Instead, 'it is the totality of the circumstances, and not any one factor, which determines whether a worker is the employee of a particular alleged employer.'" *Le*, 957 F. Supp. 2d at 1089-1090 (quoting *Baystate Alternative Staffing, Inc. v. Herman*, 163 F.3d 668, 675 (1st Cir.1998)).

**1. The drivers' services were not an integral part of Travelon's business.**

Travelon's business has two purposes. *First,* it leases vans to drivers. (Cernatinskij Dep. at 49:3-18; Cernatinschi Dep.[2] at 105:21-22). *Second,* it sells dispatch services to drivers. (Cernatinskij Dep. at 89:2-7; Cernatinschi Dep. at 104:21-24; *see also* Section 4 of Independent Contractor Agreement – Minenko Decl. Ex. 3). Travelon connects dispatchers and drivers through a MediRoutes app. (Cernatinskij Dep. at 50:1-14; 55:10-13). Travelon itself does not provide any transportation services. (Cernatinskij Dep. at 110:17-23; Cernatinschi Dep. at 105:21-24). Getting a certificate of compliance from MnDOT does not require Travelon to do anything. (Cernatinskij Dep. at 55:21-56:2; 60:25-61:6). The drivers provide the non-emergency medical transportation through Travelon's MnDOT certification number. (Cernatinskij Dep. at 120:6-15).

Travelon's core business is providing the tools with which drivers connect with STS customers. Travelon's business operations effectively terminate at the point of connecting drivers to customers and do not extend to the drivers' actual provision of services. Travelon is an intermediary company that supports drivers' transportation businesses; it is not a transportation company that employs drivers. In other words, the drivers are not an integral part of Travelon's business of leasing vans and selling dispatch subscriptions; the drivers are consumers of Travelon's services. Accordingly, the drivers are not operationally integrated into Travelon's business.

---

[2] Excerpts from the transcript of the deposition of Maria Cernatinschi are attached as Exhibit 2 to the Declaration of Michael J. Minenko.

Moreover, the success of Travelon's business does not depend on the drivers performing STS for the customers. Travelon makes no money from drivers providing medical transportation. (Cernatinskij Dep. at 140:11-12). One hundred percent of what is billed and paid for that transportation is paid to the drivers. (*Id.* at 140:20-22; 141:12-15; 203:3-6; *see also* Section 3 of Independent Contractor Agreement – Minenko Decl. Ex. 3). Travelon's income comes entirely from leasing and selling dispatch subscriptions. (*Id.* at 190:21-24). Travelon's business is able to operate without anyone providing driving services. (*Id.* at 131:7-10). It is not necessary for drivers to provide any transportation for Travelon to stay in business. (*Id.* at 132:12-15). Travelon stays in business even if the drivers do no trips. (*Id.* at 93:16-17) The special transportation services rendered by the drivers are not integral to Travelon's business. This factor weighs towards the drivers being independent contractors.

## 2. Defendants had no control over the manner in which the drivers' work was performed.

Travelon gave the drivers flexibility to choose if, when, where, how, and for whom they will provide their services. Drivers are not forced to do any trip (Cernatinskij Dep. at 279:19-21). Drivers are free to turn down trips and they are not penalized for turning down trips. (Cernatinschi Dep. at 99:4-12). If no drivers are available, dispatch asks the client if he or she can reschedule and if not, the trip is cancelled. (*Id.* at 82:8-83:8) The drivers can do as many trips as they want. (Cernatinskij Dep. at 270:16-18).

Drivers set their own schedule and they can change that schedule on a daily basis. (Cernatinskij Dep. at 273:1-9). They set their own hours and choose the time they want to

work. (Cernatinschi Dep. at 171:6-13). They decide their hours and how much they want to work (*Id.* at 210:1-2). The drivers tell dispatch what time they prefer to start working and what time they want to finish. (*Id.* at 79:12-14; 80:1-4). The dispatcher has never dispatched a trip to a driver outside of his or her preferred scheduled hours. (*Id.* at 81:23-25). Drivers are not required to give notice of taking time off. (*Id.* at 212:24-213:2).

Once a driver accepts a trip, he or she is in total charge of it; the driver calls the client, coordinates the pick-up time, and arranges the pick-up location. (*Id.* at 111:3-12; 145:16-23). The drivers are not required to follow any rules or policies imposed by Travelon when driving their passengers. (*Id.* at 153:6-13; Cernatinskij Dep. at 298:19-299:10). The driver decides what route to take for a trip. (Cernatinskij Dep. at 297:18-19).

The drivers are not supervised. They do not report to Cernatinskij. (Cernatinskij Dep. at 100:9-10). They do not report anything to Cernatinskij, and he rarely speaks to the drivers. (*Id.* at 291:3-7). The drivers are not required to report to the dispatcher, Maria Cernatinschi; they just do whatever they like. (Cernatinschi Dep. at 48:2-6).

MnDOT requires Travelon to investigate customer complaints against a driver. (Cernatinskij Dep. at 282:2-17). Maria Cernatinschi conducts the investigation on behalf of Travelon. (*Id.* at 283:13-21). Viktor Cernatinskij has nothing to do with customer complaints. (Cernatinschi Dep. at 150:25-151:4). Drivers suffer no consequences if they are the subject of a customer complaint. (*Id.* at 149:7-13).

The drivers are permitted to hire subcontractors. (Cernatinskij Dep. at 270:20-21). For example, Marc Reilly, one of the drivers listed on Exhibit A to the Complaint, teamed

up with an individual named Tom to provide transportation services sharing the same van. (Cernatinschi Dep. at 157:24-158:17; 159:7-161:1).

Some drivers, such as Jeff Anderson, Brian Fischer, and Kristen Jahraus, all of whom are listed on Exhibit A to the Complaint, have provided medical transportation on their own and not through Travelon. (Cernatinschi Dep. at 53:11-54:5; 55:15-21). These three drivers have also privately provided non-medical transportation services using the vans they leased from Travelon and without using Maria Cernatinschi's dispatching services. (*Id.* at 45:5-9; 46:13-18; 48:20-23; 49:5-12). If drivers have their own clients, they can charge the client whatever they want. (Cernatinskij Dep. at 207:21-24). Drivers are free to work for themselves, register with MnDOT themselves, and contract with another MnDOT certified transportation provider. (*Id.* at 133:6-11).

In short, Defendants do not impose requirements on how drivers must perform their work, are not present when the drivers work, and do not monitor, supervise, or control the particulars of that work. And Defendants provide the drivers the right to work simultaneously for competitors and on their own without Travelon's involvement in order to maximize their profits. This driver freedom is spelled out in the Independent Contractor Agreement the drivers sign. The agreement at Section 8 provides:

- Contractor has the right to perform services for others during the term of this Agreement.

- Contractor has the sole right to control and direct the means, manner and method by which the services required by this Agreement will be performed. Contractor shall select the routes taken, starting and quitting times, days of work, breaks during the work. Contractor shall inform Client at least three (3) weeks in advance about Contractor's available days and hours.

13

- Contractor has the right to accept or reject the trips requested by Client.

- Contractor will furnish all equipment and materials used to provide the services required by this Agreement.

- Contractor has the right to hire assistants as subcontractors, or to use employees to provide the services required by this Agreement.

- The Contractor or Contractor's employees or contract personnel shall perform the services required by this Agreement; Client shall not hire, supervise, or pay any assistants to help Contractor.
- Neither Contractor nor Contractor's employees or contract personnel shall receive any training from Client in the skills necessary to perform the services required by this Agreement.

- Client shall not require Contractor or Contractor's employees or contract personnel to devote full time to performing the services required by this Agreement.

(Minenko Decl. Ex. 3).

Travelon does not require anything of the drivers other than what is required by law. (Cernatinskij Dep. at 97:25-98:2). Requirements regarding driver qualifications and training, vehicle equipment, construction, operation, maintenance, and insurance, and records concerning drivers, accidents, insurance claims, and safety and maintenance records all arise from MnDOT's operating rules rather than Defendants' initiatives. *See, e.g.*, Minn. R. 8840.5900 (driver qualifications), Minn. R. 8840.5910 (training requirements), Minn. R. 8840.5925 (vehicle equipment), Minn. R. 8840.5940 (vehicle construction standards), Minn. R. 8840.5950 (standards for operation of vehicles), Minn. R. 8840.5975 (standards for maintenance), Minn. R. 8840.6000 (insurance), and Minn. R. 8840.6100 (records).

Requirements regarding STS record keeping, invoicing, and billing are the subjects of DHS regulations and not requirements established by Travelon. *See, e.g.*, Minn. R. 9505.0315, subps. 2 & 7 (payment limitations), Minn. R. 9505.0445 (payment rates), and Minn. R. 9505.2175, subp. 4 (medical transportation service records). The information required to be recorded on the daily trip log sheets is required by DHS and the insurance providers. (Cernatinskij Dep. at 254:23-255:5). The State of Minnesota and the insurance providers control the trips' flat fee per person and the flat fee per mile. (*Id.* at 207:1-16).

An STS provider like Travelon cannot choose to disregard or negotiate its way around the requirements of state law. These requirements are mandatory and binding upon the provider and the drivers alike. Accordingly, a provider's compliance with regulations that require it to exercise control over a driver do not evidence the provider's control over the driver. Rather, they evidence the government's control over both the driver and the provider. As such, they should not be considered evidence of the provider's control for purposes of determining the driver's status as an employee or an independent contractor. *See Hernandez v. Triple Ell Transport, Inc.*, 145 Idaho 37, 175 P.3d 199, 205 (2007) ("[respondent trucking company's] adherence to federal law is no evidence of its control over [claimant driver]. The federal government – not [respondent] – exerted control over [claimant]."); *Universal Am-Can, Ltd. v. Workers' Comp. Appeal Bd. (Minteer)*, 563 Pa. 480, 762 A.2d 328, 334-36 (Pa. 2000) (holding as a matter of law that a trucking company's compliance with federal regulations should not be considered evidence of the company's control over a driver's work for purposes of determining the driver's employment status); *see also* Minn. R. 5224.0330, subp. 14 ("Control is not indicated where an employing unit

is required to enforce standards or restrictions imposed by regulatory or licensing agencies.").

The control factor of the economic realities test weighs heavily in favor of independent contractor status.

### 3. The drivers' opportunity for profit or loss gave them a substantial amount of control over the level of their compensation.

The drivers did not receive a predetermined amount of compensation for their work. They were paid a commission of 100 percent of the total amount paid by the customer for each trip performed by the driver. (*See* Section 3 of the Independent Contractor Agreement – Minenko Decl. Ex. 3) They were paid on a by-the-job basis, which supports a finding of an independent contractor relationship. *Gray v. FedEx Ground Package Sys.*, 799 F.3d 995, 1002 (8th Cir. 2015); *see also Hanson v. Friends of Minn. Sinfonia*, 181 F. Supp. 2d 1003, 1009 (D. Minn. 2001) ("Payment by the project suggests the performer is an independent contractor.").

 The drivers control the major determinants of profit or loss. As discussed above, drivers are allowed to choose which and how many trips they take, and which routes are most time and mileage efficient. They can further control their profit or loss by providing non-medical transportation to their private clients and by providing medical transportation on their own and not through Travelon. Drivers are also permitted to transport more than one client at a time, which makes a trip more profitable. (Cernatinskij Decl. ¶ 4). Drivers are allowed to use their own vehicles and data tablets rather than lease them from Travelon. (Cernatinskij Dep. at 188:9-18; 197:3-8; 201:12-25). They can choose to go anywhere they

16

want to do vehicle repairs and maintenance. (*Id.* at 309:19-310:7; 311:11-13). Finally, they can negotiate the terms of the Independent Contractor Agreement. (*Id.* at 185:16-186:4; 192:2-25; 248:23-249:3). These opportunities for profit or loss give the drivers a substantial amount of control over their level of compensation, and therefore independence from Defendants. The drivers' opportunities for profit or loss are driven by their own initiative, judgment, and managerial skill, not simply their productivity. This factor therefore weighs in favor of independent contractor status.

### 4. The drivers had a significant investment in equipment and materials for their services.

Travelon does not invest in facilities, equipment, or helpers on behalf of drivers. Instead, Travelon requires drivers to lease or purchase all necessary resources for their work, and Travelon does not reimburse those expenditures. (*See* Independent Contractor Agreement – Minenko Decl. Ex. 3). This factor weighs in favor of independent contractor status.

### 5. A significant amount of skill was required to perform the drivers' services.

The drivers' work requires specialized training that Travelon does not provide. MnDOT requires training in the areas of defensive driving, passenger assistance training, standard first aid, and abuse prevention. (Cernatinskij Dep. at 307:13-24) (*see also* Minn. R. 8840.5910 (passenger assistance training; instruction in operating the vehicle ramp, wheelchair lift, and wheelchair securement devices; medical emergency instruction; instruction in daily vehicle inspection; first aid training; defensive driving instruction; and abuse-prevention training)). Drivers must have special skills in dealing with on-board

medical events such client seizures. (Cernatinschi Dep. at 169:25-170:11). The driver must take a personalized approach with each client who may or may not have a physical or mental disability. (Cernatinskij Dep. at 303:1-304:3). The fact that the drivers do not rely on Travelon to provide them with the training and skills to do the job increases their economic independence. The exercise of managerial discretion and the lack of training by Travelon weighs in favor of independent contractor status.

### 6. The majority of the drivers did not have a permanent relationship with Travelon.

Some drivers have a relationship with Travelon for years, while others have a relationship lasting only one day or one week. (Cernatinschi Dep. at 169:6-15). About 70 percent of the drivers have relationships with Travelon lasting less than one year. (Cernatinskij Dep. at 122:22-123:17). The initial term of the Independent Contractor Agreement is 180 days, which indicates a relationship having a definite duration. (*see* Section 19 of the Independent Contractor Agreement – Minenko Decl. Ex. 3). Drivers are not prohibited from working for or interacting with competitors during or after their relationship with Travelon ends. (*See id* at Section 8). These facts indicate that Travelon does not have a permanent working relationship with the vast majority of the drivers. This factor weighs in favor of independent contractor status.

In summary, all six factors of the economic realities test weigh in favor of finding that the drivers were independent contractors. The totality of the circumstances demonstrates that the drivers were not employees of Travelon and that the FLSA does not apply to them. Therefore, the Secretary of Labor's FLSA claims fail as a matter of law.

## B.  Even if an employment relationship existed between the drivers and Travelon, liquidated damages are not appropriate in this case.

But even if the Court determines that a genuine issue of material fact exists as to whether an employment relationship existed between the drivers and Travelon, and that the Secretary of Labor can therefore proceed with his claim for an injunction and back wages in the form of unpaid minimum wages and overtime compensation, the record in this case demonstrates that the Secretary of Labor is not entitled to recover liquidated damages against Defendants.

The FLSA provides that an employer who violates the overtime pay or minimum wage provisions of the FLSA is ordinarily liable for the unpaid overtime compensation or unpaid minimum wages, as the case may be, and an equal amount as liquidated damages. 29 U.S.C. § 216(b). However, the FLSA also provides that

> if the employer shows to the satisfaction of the court that the act or omission giving rise to [the employee's] action [for unpaid overtime compensation or unpaid minimum wages] was in good faith and that [the employer] had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.

29 U.S.C. § 260. The employer's good faith is for the Court to decide. *Longlois v. Stratasys, Inc.*, 88 F. Supp. 3d 1058, 1081 (D. Minn. 2015). Here, Defendants acted in good faith and had reasonable grounds for believing they were not violating the FLSA when they classified the drivers as independent contractors.

To avoid liability for liquidated damages, the employer has the "affirmative burden to show both subjective good faith and objective reasonable grounds for belief of

compliance." *Jarrett v. ERC Properties, Inc.*, 211 F.3d 1078, 1084 (8th Cir. 2000) (quoting *McKee v. Bi-State Dev. Agency*, 801 F.2d 1014, 1020 (8th Cir. 1986)). To demonstrate good faith, employers must show an honest effort to discover and follow the FLSA's requirements. *Chao v. Barbeque Ventures, LLC*, 547 F.3d 938, 942 (8th Cir. 2008).

In the instant case, Defendants' efforts to discover and follow the FLSA's requirements included relying on the guidance given in a book regarding independent contractors by Stephen Fishman and given by several lawyers. (Cernatinskij Dep. at 217:7-218:1). Defendants also successfully convinced the IRS and various state agencies that they properly classified the drivers as independent contractors. (*Id.* at 219:4-24). In the course of doing so, Cernatinskij read a substantial amount of information regarding FLSA standards concerning the subject of employees versus independent contractors from various books and the internet. (*Id.* at 221:13-223:23).

The fact that Defendants had objective reasonable grounds for believing that they complied with the FLSA when they classified the drivers as independent contractors rather than employees is demonstrated by two recent decisions by an unemployment law judge with the Minnesota Department of Employment and Economic Development, (Cernatinskij Dep. at 218:14-20), copies of which are attached as Exhibits 4 and 5 to the Declaration of Michael J. Minenko. These two decisions arose from applications for Minnesota unemployment benefits submitted by two former Travelon drivers, Dow Yang and Dustin Helget. *Id.* Defendants treated Yang and Helget the same as the drivers in all material respects in their respective relationships with Travelon. *Id.* Since unemployment benefits are available to eligible employees and not independent contractors, the threshold issue in

the Yang and Helget appeals was the same: whether an employment relationship existed between Yang/Helget and Alpha & Omega USA, Inc. *Id.*

Following extensive evidentiary hearings in August and September of 2016 in which the drivers and Cernatinskij testified, the unemployment law judge decided in both cases that the driver was an independent contractor with Alpha & Omega USA, Inc. and was not an employee in covered employment under the Minnesota Unemployment Insurance Law. *Id.* In the Yang appeal the unemployment law judge's reasons for her decision included the following:

> Minnesota Statutes, section 268.035, subdivision 15, states that employment means service performed by an individual who is considered an employee under the common law of employer-employee and not considered an independent contractor.
>
> Minnesota Rules 3315.0555 states that when determining whether an individual is an employee or an independent contractor, five essential factors must be considered and weighed within a particular set of circumstances. Of the five factors, the two that are the most important are those that indicate the right or the lack of a right to control the means and manner of performance and the right to discharge a worker without incurring liability. Other essential factors to be considered are the mode of payment, furnishing of materials and tools, and control over the premises where the services are performed. Other factors, including some not specifically identified in this part, may be considered if a determination is inconclusive when applying the essential factors, and the degree of their importance may vary depending upon the occupation or work situation being considered and why the factor is present in the particular situation.
>
> The preponderance of the evidence shows that Yang was an independent contractor with Travelon, rather than an employee.
>
> * * * *
>
> Nonetheless, a preponderance of the evidence shows that Travelon did not have the right to control the means and manner of Yang's performance. Based on Travelon's witnesses' more credible testimony,

Yang determined his own schedule, and when he would take time off. If Travelon received a complaint from a customer about Yang, Travelon would forward the complaint to Yang, and Yang was required to promptly resolve the complaint with the customer. Dispatch assigned Yang the trips he was being paid to perform, but at Yang's expense. The majority of the restraints placed on Yang's work were legally mandated, and did not originate from Travelon. Yang was required to undergo extensive training before he started driving for Travelon, but this training was legally mandated, and Yang paid for it. Yang could have hired assistants to help him with the work (which likely would not have been financially viable), but, he could not have permitted any other individuals to drive the van that he leased unless they received the required training and legal authorization to drive the vehicle. Yang generally had the right to control the means and manner of his performance, on a day-to-day basis. The greater weight of the factors suggests an independent contractor relationship and not an employment relationship.

Findings of Fact and Decision by Unemployment Law Judge Megan Flynn dated January 3, 2017 (Minenko Decl. Ex. 4 at 6-7).

Defendants respectfully request that the Court now decide as a matter of law that Defendants acted in good faith with objective reasonable grounds for believing that they complied with the FLSA when they classified the drivers as independent contractors, and that therefore the Secretary of Labor is not entitled to liquidated damages in connection with his claim for back wages in the form of unpaid overtime compensation and unpaid minimum wages.

## V.   CONCLUSION

Nothing in the record of this case creates a genuine issue of matter fact as to whether an employment relationship existed between the drivers and Travelon. Because the Secretary of Labor can present no sufficient evidence supporting a finding that the drivers were employees of Travelon, which is a prerequisite to prevailing on a claim under the

FLSA, the Court can determine as a matter of law that the drivers were independent contractors, and that Defendants are entitled to summary judgment. Defendants respectfully request that the Court grant their motion for summary judgment.

Dated: April 2, 2021                    MINENKO LAW, LLC

                                        By: s/Michael J. Minenko
                                        Michael J. Minenko #129872
                                        2051 Killebrew Drive, Suite 611
                                        Bloomington, MN 55425
                                        Telephone: (952) 854-1294
                                        Facsimile: (952) 851-9510
                                        mike@minenkolaw.com

                                        *Attorney for Defendants Alpha & Omega USA,
                                        Inc. and Viktor Cernatinskij*